UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENDRA L. MIDDLETON,

                                               Plaintiff,

                v.

NEW YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION, and ALVI CASTRO,
in both his individual capacity and in his official capacity as
an Investigator with the New York State Department of
Corrections and Community Supervision,

                                               Defendants.
_____

<u>DECISION AND ORDER</u>

21-CV-6622L

      Plaintiff Kendra L. Middleton ("plaintiff"), a former employee of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action against DOCCS, and DOCCS Investigator Alvi Castro ("Castro"). Plaintiff seeks compensatory and punitive damages against defendants for alleged violations of her constitutional right to due process.

      Defendants now move (Dkt. #6) to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6), on the grounds that the complaint fails to state a claim. For the reasons that follow, defendants' motion is granted, and the complaint is dismissed.

## DISCUSSION

### I.    Standard for Motions to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6)

      In considering a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) Nonetheless, "a plaintiff's

obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.     Plaintiff's Claims

The following facts, drawn from the complaint, are assumed true for purposes of considering the instant motion. *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Plaintiff commenced work for DOCCS as a parole officer on or about January 20, 2014. Approximately six weeks later, on March 4, 2020, plaintiff was placed on administrative leave pending a formal investigation into alleged workplace misconduct. On April 16, 2020, she was served with a Notice of Suspension, suspending her without pay, and four days later, on April 20, 2020, she was served with a Notice of Discipline. The Notice of Discipline charged plaintiff with engaging in unauthorized telephone communications and inappropriate and unauthorized contact, culminating in a sexual relationship, with a former inmate and current parolee, Stephen Strachan ("Strachan"). Plaintiff was also charged with making false statements in connection with the misconduct investigation. (Dkt. #1 at 1-3).

On November 12, 2020, January 28, 2021, and January 29, 2021, an arbitration hearing was held, in conformance with plaintiff's collective bargaining agreement, before arbitrator Haydee Rosario ("Arbitrator Rosario"). At the hearing, Castro testified concerning his investigation into the misconduct charges against plaintiff. He presented evidence, in the form of telephone records he had obtained by subpoena, that plaintiff and Strachan had exchanged a total of 399 telephone calls between September 10, 2019 and March 14, 2020. Evidence at the hearing also included a recording of an interview between Castro and Strachan, during which Strachan

admitted to having engaged in a sexual relationship with plaintiff after he was paroled on January 3, 2020. Strachan retracted these statements at the hearing, testifying that he had not engaged in sexual relations with plaintiff, and that the phone number at issue was not his. Plaintiff, who was represented at the hearing by counsel, likewise testified that she had not engaged in any telephone calls with Strachan, and did not have a relationship with him. (Dkt. #1 at 5).

By Decision and Award dated April 30, 2021, Arbitrator Rosario found that plaintiff had engaged in the charged misconduct, and that the appropriate penalty was the termination of her employment.

Plaintiff alleges that DOCCS and Castro violated her rights to procedural and substantive due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Sections 6 and 11 of the New York State Constitution, by illegally subpoenaing the telephone records that were used to incriminate her. Specifically, plaintiff alleges that the defendants failed to provide her with notice of the issuance of the subpoena for those records or the chance to inspect them, as required by New York Civil Practice Law and Rules ("CPLR") §2303(a) and §3120(3).

For the reasons that follow, I find that the CPLR notice and inspection provisions upon which plaintiff relies were not applicable to the subpoena for her telephone records. As a result, her constitutional due process rights could not have been violated by the defendants' failure to comply with them, and the complaint fails to state a claim upon which relief can be granted.

### III.     Defendants' Motion to Dismiss

It is undisputed that plaintiff did not receive notice of the subpoena for her telephone records or the opportunity to inspect those records, in the manner described in CPLR §2303(a) and §3120(3). Whether that circumstance is sufficient to give rise to a cognizable procedural due

process claim turns upon the narrow question of whether those notice and inspection provisions are applicable to a subpoena issued in connection with a DOCCS employee misconduct investigation such as plaintiff's.

The subpoena for plaintiff's telephone records was issued under the authority of New York Public Officers Law §61 and/or Correction Law §112(3).

Public Officers Law §61 provides:

> Every state officer, in any proceeding held before him, or in any investigation held by him for the purpose of making inquiry as to the official conduct of any subordinate officer of employee, shall have the power to issue subpoenas for and require the attendance of witnesses and the production of all books and papers relating to any matter under inquiry. *A subpoena issued under this section shall be regulated by the civil practice law and rules.*

N.Y. Public Officers Law §61 (emphasis added).

Similarly, Correction Law §112(3) states:

> The [DOCCS] commissioner . . . shall have the power to inquire into any improper conduct which may be alleged to have been committed by any person at any correctional facility or in the course of his or her performance of community supervisions, and for that purpose to issue subpoenas to compel the attendance of witnesses, and the production before him or her of books, writings and papers. *A subpoena issued under this section shall be regulated by the civil practice law and rules.*

N.Y. Correction Law §112(3) (emphasis added).

Plaintiff argues that because the subpoena for her phone records was to be "regulated by the civil practice law and rules," due process demanded that defendants comply with the notice and inspection provisions of CPLR §2303(a) and §3120(3). In so urging, plaintiff points to a 2021 decision by the New York State Supreme Court for Albany County, in which the court noted, without elaboration, that the "regulat[ion] by the civil practice law and rules" of a subpoena issued under Public Officers Law §61 necessarily required compliance with CPLR provisions "regarding notice of the subpoena and inspection of documents received pursuant to the subpoena." *See New*

4

*York State Police Investigators Assn., Local 4 IUPA, AFL-CIO v. State of New York*, 71 Misc. 3d 1007, 1026 (N.Y. Sup. Ct. Albany County 2021).

Defendants urge the Court to reject the holding in *New York State Police Investigators* as flawed, and contend that the CPLR's "regulation" of subpoenas issued under Public Officers Law §61 and/or Correction Law §112(3) should only extend to those provisions which are not self-limited to other types of matters. For example, the notice provisions of CPLR §2303(a) and §3120(3) respectively state that they apply to "any subpoena duces tecum served in a pending civil judicial proceeding," and to subpoenas issued "after commencement of an action," defined elsewhere as a "civil judicial proceeding[]." *See* CPLR §103, §2303(a), §3120(1) and (3). Defendants note that the legislative history of CPLR §2303 indicates that the New York State legislature specifically included the words "in a pending action" because it intended to prevent the application of the notice and inspection requirements outside of a civil litigation context. Defendants also warn that, if such requirements were extended to internal investigations, it "would greatly hinder and jeopardize the [d]efendants' ability to gather, secure and use information to prevent the victimization of innocent individuals and to hold guilty persons responsible" for misconduct. (Dkt. #13 at ¶5).

The Court agrees, albeit for reasons not requiring any inquiry into legislative intent or public policy. The well-settled "canon against surplusage . . . advises courts to interpret a statute to effectuate all its provisions, 'so that no part will be inoperative or superfluous.'" *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021)(quoting *Hibbs v. Winn*, 542 U.S. 88 at 101 (2004)). The Court's research reveals that the New York Court of Appeals, guided by this principle, has already spoken definitively upon the question presented, in a manner contrary to the holding of *New York State Police Investigators*.

In the *Matter of Plastic Surgery Group, P.C. v. Comptroller of the State of New York*, 34 N.Y. 3d 507 (N.Y. Ct. App. 2019), the Court of Appeals examined a provision of the State Finance Law which granted subpoena powers to the office of the Comptroller in connection with its own investigations, using language identical to that contained in Public Officers Law §61 and Correction Law §112(3): "[the Comptroller] may issue a subpoena . . . in reference to any matter within the scope of the inquiry or investigation being conducted . . . *A subpoena issued under this section shall be regulated by the civil practice law and rules*." N.Y. State Finance Law §9 (emphasis added).

The *Plastic Surgery Group* plaintiff argued, as plaintiff does here, that where a state official's subpoena power is "regulated by the civil practice law and rules," the official is required to comply with all of the CPLR's notice provisions. However, the Court of Appeals soundly rejected that notion:

> "[Plaintiff] would have this Court infer that the legislature intended the Comptroller's subpoenas to be governed by all CPLR provisions regulating subpoenas of any kind, regardless of whether those provisions are inapplicable on their face. . . Nevertheless, we reject the [plaintiff's] contention that the broader language here was intended to subject the Comptroller's subpoenas to the entirety of the CPLR, including provisions that do not govern investigatory subpoenas at all. It was not necessary for the legislature to state expressly that 'regulated by the civil practice law and rules' means regulation by *applicable* provisions in the CPLR, such as those governing subpoenas in general (*see generally* CPLR [§]23)."

*Matter of Plastic Surgery Group*, 34 N.Y.3d 507 at 518 (emphasis in original).

Indeed, in choosing an example that would best illustrate the "absurd result" that would follow if investigatory subpoenas were governed by the entirety of the CPLR, the Court of Appeals selected none other than the notice provisions of CPLR §2303(a), which, if applied to state officials performing investigations, would irrationally force them to "be governed by provisions that are

6

expressly applicable only to a 'subpoena . . . served in a pending civil judicial proceeding.'" *Id*. (quoting N.Y. CPLR §2303(a)).

The Court is persuaded by the holding in *Plastic Surgery Group*, and finds it to be dispositive of the question presented here, which involves identical statutory language concerning subpoena powers "regulated by the civil practice law and rules." *Compare* N.Y. State Finance Law §9 *with* Public Officers Law §61 *and* Correction Law §112(3). Accordingly, I find that to the extent that the subpoena for plaintiff's telephone records was "regulated by" the CPLR, it was not governed by any CPLR provisions which were "inapplicable on their face." *Matter of Plastic Surgery Group,* 34 N.Y.3d 507 at 518. Since the notice and inspection provisions of CPLR §2303(a) and §3120(3) are, by their own terms, applicable only to civil judicial proceedings and actions, and not to internal state agency investigations into employee misconduct, defendants were not required to comply with them in the proceeding at issue, and their failure to do so cannot form the basis for a procedural due process claim.

Plaintiff's due process claims, as alleged, rest solely upon the procedural contention that she did not receive notice of the telephone records subpoena, or the opportunity to inspect the telephone records that were produced, in compliance with CPLR §2303(a) and §3120(3). To the extent that plaintiff's complaint also makes general reference to violations of her substantive right to due process, the Court observes that the plaintiff's complaint does not assert any plausible basis for a substantive due process claim. According to the complaint, plaintiff had several months' advance notice of the charges against her, as well as a description of the evidence defendants intended to present, and was given a full and fair opportunity both to object to that evidence, and to present her own, with the assistance of counsel, over a three-day hearing that was held over two-and-a-half months before an impartial arbitrator. She has simply not asserted conduct by any

defendant that is so outrageously arbitrary as to constitute a gross abuse of governmental authority. *See Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir.1999) ("[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority").

Having found that the complaint fails to state a claim, the Court declines to reach defendants' additional arguments.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint (Dkt. #6) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
June 16, 2022.